UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PETER KILUK and HOLLY KILUK, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No.<br>) 11-10731-FDS |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This is a lawsuit brought by homeowners against their mortgage lender, arising out of a government program to promote the modification of home mortgage loans to avoid foreclosure. Defendant Select Portfolio Servicing, Inc., ("SPS") participates in the Home Affordable Modification Program, a federal program designed to reduce foreclosures. As part of the program, SPS entered into a Trial Period Plan agreement ("TPP") with plaintiffs Peter Kiluk and Holly Kiluk.[1] The complaint alleges that the TPP was a binding contract between the parties, under which SPS was obligated to offer a permanent loan modification if the Kiluks complied with certain terms and conditions over a three-month trial period. The Kiluks contend that they complied with their obligations under the TPP and that SPS did not. The complaint asserts claims

---

[1] Although the copy of the TPP attached to the complaint is not signed, defendant does not contest that it entered into the TPP with plaintiffs.

for misrepresentation and breach of contract, and also seeks a declaratory judgment and other equitable relief.[2] Jurisdiction is based on 28 U.S.C. §§ 1332 and 1367.

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion will be granted in part and denied in part.

I. **Statutory Framework**

  A. **The Home Affordable Mortgage Program**

Congress enacted the Emergency Economic Stabilization Act in the midst of the financial crisis of 2008. *See* Pub. L. No. 110-343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201-5253).[3] The statute created the Troubled Asset Relief Program ("TARP"), through which the Secretary of the Department of the Treasury was delegated broad powers to mitigate the financial impact of the foreclosure crisis and preserve homeownership. 12 U.S.C. §§ 5201, 5211-5241. One component of TARP requires the secretary to "implement a plan that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . other available programs to minimize foreclosures." *Id.* § 5219(a).[4]

---

[2] Although the complaint outlines four counts, only Counts 1 and 3 of the complaint allege causes of action. Specifically, Count 1 alleges misrepresentation and Count 3 alleges breach of contract. Counts 2 and 4 allege forms of relief; Count 2 seeks a declaratory judgment as to the Kiluks' legal rights under the mortgage and TPP, and Count 4 seeks equitable relief in the form of "a temporary restraining order, preliminary injunction and final injunction." Although defendant has brought a motion to dismiss as to all four counts, it is clearly premature to determine the form of relief to which plaintiff is entitled before adjudicating the merits of plaintiffs claims. Thus, the Court will analyze defendant's motion to dismiss as to Counts 1 and 3.

[3] Although much of the information in this section is not explicitly cited in the complaint, the guidelines are matters of public record and may therefore be considered here. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").

[4] The statute contains an identical directive for any federal property managers who own or control mortgages and mortgage-backed securities. *See* 12 U.S.C. § 5220(b)(1). It further defines "modifications" to include "reduction in interest rates; . . . reduction of loan principal; and . . . other similar modifications." *Id.* § 5220(b)(2).

Congress also granted the secretary authority to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." *Id.*[5]

Acting under this authority, the Secretary of the Treasury announced the "Making Home Affordable Program" in February 2009.[6] One part of this program is the "Home Affordable Mortgage Program" ("HAMP"). The goal of HAMP is to provide relief to borrowers who have defaulted or are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt. *See* U.S. Dep't of the Treasury, Supplemental Directive 09-01, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf. Under HAMP, loan servicers are provided with $1,000 incentive payments for each permanent mortgage-loan modification completed. These modifications proceed under a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable.

The Department of the Treasury has issued a series of directives that provide guidance to servicers implementing HAMP. Under these guidelines, mortgage servicers are directed to identify and solicit borrowers who are in default on their mortgage payments, or soon will be. *See*

---

[5] Section 5219(c) of the statute, entitled "Consent to Reasonable Loan Modification Requests," provides:

> Upon any request arising under existing investment contracts, the Secretary shall consent, where appropriate, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures, including term extensions, rate reductions, principal write downs, increases in the proportion of loans within a trust or other structure allowed to be modified, or removal of other limitation on modifications.

12 U.S.C. § 5219(c).

[6] The Department of the Treasury created the "Making Home Affordable Program" jointly with the Federal Housing Finance Agency, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *See Williams v. Geithner*, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009).

3

*id.* Within this group, borrowers may be eligible for a loan modification under HAMP if the mortgage loan originated before January 1, 2009; if the mortgage is secured by the borrower's primary residence; and if the mortgage payments amount to more than 31% of the borrower's monthly income. *Id.* at 2.[7] To participate in HAMP, borrowers must submit an affidavit documenting financial hardship. *Id.* at 3. In addition, the servicer must conduct a Net Present Value ("NPV") test, which assesses whether it would be more advantageous to foreclose or to modify the terms of the first-lien loan. *Id.* at 3-5.

If the homeowner qualifies under these eligibility criteria, the servicer may offer the homeowner a TPP agreement. *Id.* at 5-6. Under the TPP, the borrower pays modified mortgage payments calculated based on the financial documentation submitted during the eligibility phase. The homeowner is also required to open an escrow account and submit additional financial documents, and may be required to undergo credit counseling. The trial period lasts for three months. *See id.* at 17. As long as the borrower has complied with the terms of the TPP and the income representations have been verified, the servicer is directed to offer the borrower a permanent modification at the end of the three-month period. *See id.* at 18.[8] SD 09-01 anticipates that the servicer will verify the borrower's representations regarding his or her income during the trial period. *See id.*

### B.     Contractual Language in the Trial Period Plan Agreements

---

[7] There are several other eligibility requirements. Among other things, the mortgage loan must be secured by property containing no more than four units, and, depending on the number of units, the guidelines set ceilings on the unpaid principal balance. *See id.* at 2-3.

[8] SD 09-01 provides, "If the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period as specified in the Trial Period Plan." *Id.* at 18.

The government created one uniform agreement to be executed by servicers and eligible borrowers. The TPP is a four-page document and "has the appearances of a contract." *Durmic v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 4825632, at *1 (D. Mass. Nov. 24, 2010).[9] The first sentence of the TPP provides:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

(Compl. Ex. 1). Four sentences later, the TPP states, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of the Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer." (*Id.*).

Section 2 of the TPP sets forth the amount and date of each monthly payment, and states that "TIME IS OF THE ESSENCE under this Plan." (*Id.* ¶ 2). It next details three conditions under which the TPP would not result in a permanent modification: if, prior to the Modification Effective Date, (1) if the Lender does not provide the borrower with a fully executed copy of the plan and permanent modification agreement, (2) if the borrower does not make all payments provided under the plan, or (3) if the financial representations made in the eligibility assessment stage are no longer correct. (*See id.* ¶ 2(F)).

Section 3 explains how the permanent loan modification will be calculated. It then provides:

> If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification

---

[9] As Judge Stearns noted in *Durmic*, the TPP "characterizes itself as an agreement, contains signature lines for the Lender and the Borrower and includes distinctly contractual phrases such as 'under seal' and 'time is of the essence.'" 2010 WL 4825632 at *1 n. 4.

Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount . . . .

(*Id.* ¶ 3).

## II. **Factual Background**

The following factual allegations are drawn from the complaint and the attached exhibits. *See Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008).

Plaintiffs Peter Kiluk and Holly Kiluk purchased their home in 1998 by taking out a $203,000 mortgage. (Compl. ¶ 5; Ex. 4). The total mortgage balance currently exceeds $230,000. SPS is the servicer of the loan. (Compl. ¶¶ 5, 11; Ex. 2).[10]

Due to various personal hardships, the Kiluks began to fall behind on their monthly payments in 2008. (Compl. ¶ 5). At some point, they sought a modification of their mortgage payments.

Effective September 1, 2009, the Kiluks entered into a TPP with SPS. (*Id.* ¶¶ 5, 14; Ex. 1). They were required, among other things, to make three reduced monthly payments of $1,092.28; provide accurate financial information to SPS; and submit to credit counseling on request. (*See* Compl. ¶ 5; Ex. 1 ¶ 2). They complied with the requirements of the TPP. However, on February 18, 2010, defendant sent them a letter denying their request for a permanent modification under HAMP, explaining that the owner of the loan is not participating in HAMP, and that defendant does not have the contractual authority to modify plaintiffs' loan. (*Id.* ¶¶ 5-6, 15-16, 19, 21; Ex. 2, at 1-2). SPS then initiated foreclosure proceedings against their

---

[10] The complaint alleges that the mortgage is "held by" SPS. (Compl. ¶¶ 5, 11). However, the attached exhibits make it clear that SPS does not actually hold the mortgage, but merely acts as the servicer. (*See* Ex. 2, at 1-3).

home.  (*Id.* ¶¶ 17, 22).

On September 23, 2010, Peter Kiluk sent SPS a demand letter pursuant to Mass. Gen. Laws ch. 93A.  The letter requested that SPS modify the mortgage "by reducing the monthly payment to a level similar to the August 2009 HAMP offer and capitalize all arrears to put him in 'current' status."  (Ex. 2, at 4-5).

The Kiluks filed the present action on March 21, 2011.  Count 1 alleges misrepresentation; Count 2 seeks a declaratory judgment; Count 3 alleges breach of contract; and Count 4 seeks injunctive relief.  The action was removed by SPS to federal court on April 28, 2011, with jurisdiction based on diversity of citizenship.  SPS has moved to dismiss for failure to state a claim upon which relief can be granted.

### III.  Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV. Analysis

### 1. Misrepresentation

Defendant first contends that plaintiffs have failed to state a claim for negligent misrepresentation.[11] To assert a claim for negligent misrepresentation in Massachusetts, plaintiffs must allege that defendant "'(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.'" *Braunstein v. McCabe*, 571 F.3d 108, 126 (1st Cir. 2009) (quoting *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 902 (2009)). Defendant contends that the complaint fails to allege sufficient facts to support a

---

[11] Count 1 of the complaint does not indicate whether it is alleging intentional or negligent misrepresentation. Rather it simply alleges "misrepresentation" and requests a judgment for "tortious misrepresentation." (Compl. ¶ 27). Because the complaint does not plead a claim for intentional misrepresentation with sufficient particularity to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b), the Court will interpret the complaint as an attempt to allege a claim for negligent misrepresentation. *See Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998); *Masso v. United Parcel Service of America, Inc.*, 884 F. Supp. 610, 615 (D. Mass. 1995) ("Rule 9(b) does not apply to a count alleging a negligent misrepresentation.").

The Court recognizes that the First Circuit "reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud." *North American Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (citing *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)). However, as discussed below, plaintiffs' core allegation here is that defendants negligently misrepresented their contractual authority by failing to disclose material facts.

claim that defendant supplied plaintiffs with false information and that plaintiffs suffered a pecuniary loss.

Defendant first contends that the complaint does not sufficiently allege a false representation to plaintiffs. Defendant characterizes the complaint as alleging that defendant misrepresented that plaintiff's "entitlement to a loan modification was dependent only on their making timely trial payments," when, in reality, the TPP contained other terms and conditions. (Def. Mem. at 4).

However, defendant's argument does not accurately reflect the allegations in the complaint. The complaint alleges that defendant represented that plaintiffs would receive a modification if they met the "the modification requirements *including* timely trial payments." (Compl. ¶ 25 (emphasis added)). While the complaint itself does not provide further detail, the TPP attached to the complaint outlines the other modification requirements, as well as defendant's obligations. (Ex. 1).[12]

Furthermore, while the complaint alleges that defendant falsely represented that meeting the TPP requirements "would result in a modified mortgage," (Compl. ¶ 25), the core of the alleged misrepresentation is that defendants misrepresented that they had the authority to make such a decision.[13] By agreeing to the TPP, defendants implicitly represented that they had the

---

[12] As discussed further regarding plaintiffs' breach of contract claim, the TPP is ambiguous as to whether defendants are required to modify plaintiffs' loan permanently upon plaintiffs' fulfilling their obligations, or whether defendant is only required to provide plaintiffs with a decision on whether or not they qualify for a permanent modification by the modification effective date in the TPP. However, for the reasons discussed below, this ambiguity is not fatal to plaintiffs' misrepresentation claim under 12(b)(6).

[13] Specifically, the complaint, along with the attached exhibits, allege facts that indicate the TPP made representations that the defendant "knew or should have known" were false because the owner of the loan did not participate in modifications. (Compl. ¶¶ 26-27; Ex. 2, at 1-3).

9

authority to modify the contract, or at least to make a decision as to whether or not plaintiffs were entitled to a modification. But in a letter sent to plaintiffs on February 18, 2010, defendant explained that it did not have the contractual authority to modify plaintiffs' loan, as the owner of the loan does not participate in HAMP. (Ex. 2, at 1).

While nondisclosure alone does not ordinarily support a claim for negligent misrepresentation, "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." *Augat, Inc. v. Collier*, 1996 WL 110076, at *14 (D. Mass. Feb. 8, 1996) (quoting *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 414 (1st Cir. 1985)). Defendant entered into an agreement designed, at the very least, to evaluate whether plaintiffs were eligible for a permenant loan modification. Whether defendants had the contractual authority to execute such a modification is the sort of material fact that must be disclosed to avoid deceiving that other party.

Defendant next argues that it is "impossible to discern" from the complaint how plaintiffs suffered pecuniary harm by relying on defendant's alleged misrepresentations. To survive a motion to dismiss, the complaint must allege that plaintiffs suffered a pecuniary loss as a consequence of their reliance on defendant's alleged misrepresentation. *Masso v. United States Parcel Service of America, Inc.*, 884 F. Supp. 610, 617-18 (D. Mass. 1995); *see also Danca v. Taunton Sav. Bank*, 385 Mass. 1, 9 (1982).

The complaint alleges that, in reliance on defendant's misrepresentation, plaintiffs completed the application process, submitted additional documentation to defendant, and made three trial mortgage payments. (Compl. ¶ 14, 25). Plaintiffs correctly contend that this may be sufficient consideration to modify plaintiff's pre-existing duty and a sufficient detriment to allege

promissory estoppel. *See Wells Fargo Bank, N.A.*, 2011 WL 2945795, *11 n.3 (D. Mass. July 22, 2011); *Bosque v. Wells-Fargo Bank N.A.*, 762 F. Supp. 2d 342, 351-53 (D. Mass. 2011). However, negligent misrepresentation requires not only that plaintiffs relied to their detriment on defendant's representation, but that as a consequence of their reliance, they lost "money or . . . something which money could acquire." *Masso*, 884 F. Supp. at 618.[14]

The only money (or items money could acquire) that plaintiffs lost in reliance on defendant's alleged misrepresentation alleged in the complaint are the three reduced mortgage payments plaintiffs made under the TPP. However, the loss of that money did not *harm* plaintiffs. Plaintiffs had an existing contractual obligation to make mortgage payments to defendant. Relying on defendants representation, plaintiffs changed their financial position, but the change was to their pecuniary *benefit*, in the form of a lower monthly mortgage payment. *See Olivares v. PNC Bank*, N.A., 2011 WL (D. Minn. Oct. 13, 2011). Therefore, the modified mortgage payments, standing alone, do not constitute a pecuniary harm. *Id.*; *see also Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 4860167, at *7 (N.D. Ill. Jan. 25, 2011) ("Given [plaintiff's] allegation that [defendant] agreed not to foreclose on her home even if she paid less than she owed, her complaint does not plausibly suggest that she suffered any actual pecuniary loss as a result of [defendant's] alleged deception."); *cf. Bosque*, 762 F. Supp. 2d at 352 (in light of the pre-existing

---

[14] Requiring plaintiffs suffer a pecuniary loss in a claim for negligent misrepresentation helps to ensure that they are compensated only as much as is needed to avoid injustice. *See* Restatement (Second) of Torts § 552B cmt. b; Restatement (Second) Contracts § 90, cmt a; *cf. Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1380 (1st Cir. 1991) (promissory estoppel applies "if injustice can be avoided only by enforcement of the promise"). Unlike a case of deliberate deception, a claim of negligent misrepresentation, by definition, requires that defendant did not have dishonest intentions, but simply failed to exercise reasonable care in what it said and did. In such a case, injustice is avoided by compensating plaintiff for her loss, not by making the bargain unprofitable for defendant. *See* Restatement (Second) of Torts § 552B cmt. b.

duty rule, "modified mortgage payments standing alone would likely not constitute cognizable consideration under the TPP");.

The complaint does not allege any way in which plaintiffs financially relied on defendant's representations beyond making the trial mortgage payments. Hypothetically, at least, the pecuniary loss requirement might be met if the plaintiff, relying on defendant's promises in the TPP, suffered other harms—such as incurring increased fees, losing opportunities to pursue refinancing, or forgoing other opportunities to avoid foreclosure. *See Olivares*, N.A., 2011 WL 4860167, at *7 (citing case where plaintiff alleged she avoided borrowing from friends, obtaining a different bank loan, or selling her home to avoid foreclosure in reliance on defendant's promise); *Bosque*, 762 F. Supp. 2d at 354; *see also Masso*, 884 F. Supp. at 617-18 (finding unspecified "money damages" sufficient allegation of pecuniary harm to survive a motion to dismiss).

Here, the complaint fails to allege that plaintiffs suffered any compensable pecuniary harm in reliance on defendant's alleged misrepresentations. It therefore fails to sufficiently allege the elements of negligent misrepresentation.

## 2. Breach of Contract

### a. Standing

Defendant next argues that plaintiff's claim for breach of contract, which arises out of the denial of a HAMP loan modification, should be denied as a matter of law because the HAMP guidelines do not extend a private right of action to borrowers.[15] Defendant argues that because

---

[15] Defendant also contends that because a participant in HAMP is not required to modify all eligible loans, plaintiff's HAMP-related claims should be dismissed as a matter of law. Although unclear, this argument appears to be construing defendant's obligations under the TPP and thus will be addressed when discussing the breach of contract claim.

there is no common-law right to a modification of a mortgage, that plaintiffs must be bringing their claim as a private right of action under HAMP.

It is true that HAMP does not create a private right of action for borrowers. *See, e.g.*, *Acuna v. Chase Home Fins., LLC*, 2011 WL 1883089, at *4 (E.D. Va. May 17, 2011) ("It is well-settled that borrowers do not have a private right of action under HAMP."); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 311 (D. Mass. 2010) ("[T]here is no private right of action under HAMP.")*; Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773, at *2 (N.D. Cal. June 30, 2010); *Simon v. Bank of Am., N.A.*, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010).

Whether HAMP creates a private right of action, however, is not the issue in this case. While there may have been no legal obligation for defendant to agree to modify plaintiffs' mortgage, plaintiffs have brought suit on the theory that the TPP constituted a contract between defendant and plaintiff, and that defendant breached that contract. Their claims therefore arise under defendant's alleged failure to comply with its contractual obligations. *See Durmic*, 2010 WL 4825632 at *2 n.9.

Defendant contends that plaintiffs' common-law cause of action should be dismissed because it arises out of the denial of a loan modification—apparently arguing that plaintiffs cannot vindicate any rights that relate to HAMP. That argument is without merit. Defendant does not contend that HAMP or the HAMP guidelines preempt state-law contract actions. Indeed, the Court is aware of no precedent for the proposition that, as a general matter, a contract's relationship to federal law requires the dismissal of any state-law claims that may arise under it.

The fact that the TPP is a form contract created by the government makes no difference. If the TPP is properly construed as a contract between the parties in this case, then plaintiffs may bring suit in order to recover for any breach of that contract.

### b. Breach of Contract under the TPP

In order to assert a claim for breach of contract in Massachusetts, plaintiffs must allege "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted). The elements of a valid contract are an offer, acceptance, and an exchange of consideration or a meeting of the minds. *See Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009). Defendant contends that the TPP is insufficient to allege a viable breach of contract claim as a matter of law.

Defendant cites several cases from other districts to support its contention that the TPP is not a valid contract and, thus, a breach of contract claim founded upon the TPP must be dismissed. However, multiple cases in this District have held that the TPP "has the appearances of a contract," and is sufficient to survive a motion to dismiss. *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *7-*9 (D. Mass. July 15, 2011); *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 WL 2637222, at *3-*4 (D. Mass. July 6, 2011); *Stagikas v. Saxon Mortg. Services, Inc.*, 2011 WL 2652445, at *4-*5 (D. Mass. July 5, 2011); *Bosque v. Wells-Fargo Bank N.A.*, 762 F. Supp. 2d 342, 351-53 (D. Mass. 2011); *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 WL 4825632, at *2-*4 (D. Mass. Nov. 24, 2010).

Defendant acknowledges some of this case law.[16] It contends, however, that insofar as the TPP is construed as a contract, it does not provide plaintiffs with a legal right to a permanent loan modification, and thus the complaint does not state sufficient facts to allege that defendant breached the contract. In essence, defendant argues that even under *Bosque*, the TPP at most requires servicers to advise borrowers of a decision as to whether they are entitled to the permanent modification, and, here, defendant sent plaintiffs a letter on February 18, 2010, denying their request for a permanent modification under HAMP. Thus, defendant contends, it did not breach the terms of the TPP as discussed in *Bosque*.

The fact that defendants informed plaintiffs that their request for a loan modification was denied does not distinguish this case from *Bosque*. The plaintiffs in *Bosque* contended that their compliance with the TPP entitled them to either "(1) a new contract with a permanent loan modification or (2) a decision on whether plaintiffs are entitled to the permanent modification *by the modification effective date stated in the TPP*." *Bosque*, 762 F. Supp. 2d at 352 (emphasis added). Defendant here did not do either of these things. Defendant sent a letter informing plaintiffs that they did not qualify for a loan modification on February 18, 2010—more than two months after the modification effective date of December 1, 2009.[17] Thus, defendant's denial letter did not satisfy the terms of the TPP as discussed in *Bosque*.[18]

---

[16] At the time defendant filed its motion to dismiss, only *Bosque* and *Durmic* had been decided.

[17] The TPP explains that the "Modification Effective Date" is "the first day of the month following the month in which the last Trial Period Payment is due." (Ex. 1 ¶ 2). Plaintiffs' last trial period payment was due on November 1, 2009. (*Id.*).

[18] Moreover, defendant's February 18, 2009 denial letter does not appear to be a decision on whether plaintiffs were entitled to a permanent modification under the TPP. The letter does not address whether plaintiffs satisfied their obligations under the TPP, nor does it state that plaintiffs' financial records render them ineligible for a permanent modification. Rather, it simply states that the owner of the mortgage is not participating in

In any event, *Bosque* explicitly stated, and later courts have agreed, that "[w]hether . . . the TPP obligates servicers to provide borrowers who are in compliance with a permanent loan modification or merely a decision on a permanent loan modification is an issue better resolved at a later stage of the proceedings." *Bosque*, 762 F. Supp. 2d at 352 n.12; *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *8 (D. Mass. July 15, 2011); *see also Dixon v. Wells Fargo Bank, N.A.*, 2011 WL 2945795, *11 n.3 (D. Mass. July 22, 2011).[19] Moreover, other cases in this district have held that a plaintiff's contention that they were entitled to a permanent loan modification under the TPP—after being denied—was sufficient to survive a motion to dismiss. *See, e.g.*, *Stagikas v. Saxon Mortg. Services, Inc.*, 2011 WL 2652445, at *4-*5 (D. Mass. July 5, 2011).

Thus, *Bosque* and the "growing chorus of cases in this district" hold that the TPP is sufficient to meet the pleading standards of Rule 12(b)(6), and that alleging defendant's failure to permanently modify the loan can be sufficient to withstand a motion to dismiss. *See Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *8 & n.5 (D. Mass. July 15, 2011).

While poorly organized, the complaint, along with the attached exhibits, sufficiently alleges all the elements of a claim for breach of contract. Defendant's motion to dismiss the contract claim will therefore be denied.

---

HAMP and has not given SPS authority to modify plaintiff's mortgage. (*See* Ex. 2, at 1-2). Thus, even if defendant had informed plaintiffs by the modification effective date, making inferences in plaintiffs' favor, the letter still does not satisfy the terms of the TPP. *Bosque*, 762 F. Supp. 2d at 352; s*ee also Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

[19] The complaint alleges that plaintiffs complied with the terms of the TPP by timely making the trial period payments and submitting financial documentation. (Compl. ¶¶ 5, 14, 15).

## V.     Conclusion

For the foregoing reasons, defendant's motion to dismiss as to Count 1, Negligent Misrepresentation, is GRANTED, and its motion to dismiss as to Count 3, Breach of Contract, is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated:  December 19, 2011